**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-02603-REB-KMT

DAVID C. ROSS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF TRANSPORTATION,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**Blackburn, J.**

The matter before is the motion to dismiss contained within **Defendant's Memorandum Brief in Support of Combined Motion To Dismiss and Motion for Summary Judgment** [#19],[1] filed June 29, 2012. I previously granted that portion of the motion seeking summary judgment as to plaintiff's Title VII claims, but ordered the parties to submit supplemental briefing on the issues implicated by defendant's motion to dismiss plaintiff's section 1983 and state law claims for lack of subject matter jurisdiction. (*See Order* [#55], filed November 14, 2012.) I now grant the motion to dismiss as well.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

---

[1] "[#19]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## II. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and thus may only adjudicate claims that the Constitution or Congress have given them authority to hear and determine. **Morris v. City of Hobart**, 39 F.3d 1105, 1110 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1960 (1995); **Fritz**, 223 F.Supp.2d at 1199 (D. Colo. 2002). A motion alleging immunity from suit implicates the court's subject matter jurisdiction and therefore is analyzed under Fed. R. Civ. P. 12(b)(1). **See Neiberger v. Hawkins**, 150 F.Supp.2d 1118, 1120 (D. Colo. 2001).

A motion to dismiss under Rule 12(b)(1) may consist of either a facial or a factual attack on the complaint. **Holt v. United States**, 46 F.3d 1000, 1002 (10th Cir. 1995). Because defendant's motion presents a facial attack, I must accept the allegations of the complaint as true. **Id**. Nevertheless, the motion "'must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.'" **Fritz v. Colorado**, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002) (quoting **Groundhog v. Keeler**, 442 F.2d 674, 677 (10th Cir. 1971)).

## III. ANALYSIS

The facts of this case are set forth in detail in my previous **Order** at 3-8 ([#55], filed November 14, 2012), and need not be repeated here. Defendant has moved to dismiss plaintiff's constitutional and state law claims as barred by the Eleventh Amendment. Determination whether CDOT is entitled to Eleventh Amendment immunity depends on whether it is properly considered an "arm of the state." **See Ruiz v. McDonnell**, 299 F.3d 1173, 1180 (10th Cir. 2002), **cert. denied**, 123 S.Ct. 1908

(2003); ***Sturdevant v. Paulsen***, 218 F.3d 1160, 1164 (10th Cir. 2000). The question whether CDOT is an arm of the state appears to be one of first impression.[2] Defendant bears the burden to prove its status as an arm of the state. ***See Thomas v. Guffy***, 2008 WL 2884368 at * 4 & nn.1-4 (W.D. Okla. July 25, 2008).[3]

Whether an entity is an arm of the state – as opposed to a political subdivision such as a county or municipality – depends on the "nature of the entity created by state law." ***Regents of the University of California v. Doe***, 519 U.S. 425, 429 & n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). Primary among the several factors that may impact the analysis is whether any judgment against the entity will be paid by the state. In an attempt to answer this question, defendant notes that any judgment taken against CDOT will be paid out of the Colorado Risk Management Fund.[4] Yet as I noted previously, this fact alone has been found insufficient to conclusively answer the arm-of-the-state question. (***See* Order** at 11 [#55], filed November 14, 2012.) ***See also Sturdevant***, 218 F.3d at 1165; ***Simon v. State Compensation Insurance Authority***,

---

[2] There is authority for the proposition that the former State Highway Department was entitled to the benefit of the state's Eleventh Amendment immunity. ***See Mitchell v. Board of Commissioners of Morgan County***, 152 P.2d 601, 602 (Colo. 1944).

[3] In his supplemental brief, plaintiff complains that defendant should not have been given further opportunity to address the Eleventh Amendment issues. As I noted in my previous order, however, the interests protected by the Eleventh Amendment are not so easily waived. (***See* Order** at 12 n.10 [#55], filed November 14, 2012.) Moreover, because the Eleventh Amendment implicates the court's jurisdiction and is not merely a defense to liability, but actually insulates the state from suit, ***see Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.***, 506 U.S. 139, 145, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993), it is imperative for this court to ensure that these issues are fully and properly considered and resolved.

[4] The fund covers all "state agencies," a category which, as noted below, encompasses principal departments of the state such as CDOT. §24-30-1502(5)(a), C.R.S. (***See also* Def. Motion App.**, Exh. A.) The fund is a program of self-insurance maintained by the state of Colorado, §24-30-1501, C.R.S., to pay, *inter alia*, claims brought against the state, its officials, and its employees, ***see*** §24-30-1510(3)(a), C.R.S.

946 P.2d 1298, 1308-09 (Colo. 1997) (finding entity not to be an arm of the state despite participation in the risk management fund).  Moreover, defendant fails to address the key inquiry that proved problematic in *Sturdevant*: the extent to which the fund is comprised of state funds, rather than commingled state and local funds. *Sturdevant*, 218 F.3d at 1165.  The fact that the General Assembly appropriates money to the fund annually, *see* §24-30-1510(1)(a), C.R.S., does not speak to this more precise inquiry.

Perhaps a definitive answer to this question is impossible, or varies from year to year (a fact which in itself would not favor a finding that CDOT shares the state's Eleventh Amendment immunity).  Nevertheless, as in *Sturdevant*, the other factors which inform my analysis themselves may be sufficient to determine whether CDOT is an arm of the state.  *See Sturdevant*, 218 F.3d at 1166.  These considerations include:

> (1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state," *Watson v. University of Utah Medical Center*, 75 F.3d 569, 574-75 (10th Cir. 1996);
>
> (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing," *id.*, and, more specifically "whether the entity has the ability to issue bonds or levy taxes on its own behalf," *Steadfast Insurance Co. v. Agricultural Insurance Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); and
>
> (3) "whether the entity in question is concerned primarily with local or state affairs" given its "function, composition, and purpose," *id.*

Even so, the Tenth Circuit has warned against "becom[ing] caught up in the minutiae of state law," allowing them to "eclipse a fundamental distinction" between

instrumentalities of the state and political subdivisions: "political control by some community other than the state as a whole." ***Sturdevant***, 218 F.3d at 1170.

Mindful of these legal precepts, my examination and analysis of the relevant considerations leads me to conclude that CDOT is an arm of the state, and thus entitled to the benefit of the state's Eleventh Amendment immunity.

### A. CHARACTERIZATION UNDER STATE LAW

The first relevant inquiry is how CDOT is characterized under state law, with an eye particularly toward quantifying how much autonomy it enjoys from the state. This step entails "a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state." ***Steadfast Insurance Co.***, 507 F.3d at 1253. The more autonomy an entity enjoys from state control, the more likely it is to be found not to be an arm of the state. ***See Watson***, 75 F.3d at 574.

Article IV, section 22, of the Colorado Constitution provides that

> All executive and administrative offices, agencies, and instrumentalities of the executive department of state government and their respective functions, powers, and duties . . . shall be allocated by law among and within not more than twenty departments. Subsequently, all new powers or functions shall be assigned to departments, divisions, sections, or units in such manner as will tend to provide an orderly arrangement in the administrative organization of state government.

In accordance with this provision, §24-1-110(1), C.R.S., allocates the functions, powers, and duties of the executive department to 19 "principal departments," one of which is the Department of Transportation, §24-1-110(1)(v), C.R.S. Pursuant to state law, a "state agency" is defined to include any principal department of the state. §24-30-

5

1502(5)(a).

The head of CDOT is its executive director, who is appointed by the Governor with the consent of the state senate and serves at the pleasure of the Governor. §§24-1-128.7 & 43-1-103(1), C.R.S. The executive director is guided in the exercise of his duties by a transportation commission, consisting of eleven members appointed by the Governor.[5] **See Sutton v. Utah State School for the Deaf and Blind**, 173 F.3d 1226, 1233 (10th Cir. 1999). Among its myriad duties, the commission formulates general policy relating to CDOT's mission, prescribes administrative practices to be followed by the executive director, makes studies and advises the executive director in the exercise of his duties, and promulgates and adopts all department budgets. **See** §43-1-106(8)(a)-(s), C.R.S.

The commission adopts CDOT's budget, which is then presented to committees of the General Assembly, returned to the commission for preparation of a final proposal, and ultimately forwarded to the Governor for approval. §§43-1-113(2) & 43-1-113(9)(c)(1). (**Def**. **Reply Br. App.**, Exh. A ¶ 7 at 2.) The General Assembly then appropriates funds to CDOT for its operations, and subsequent expenditures are allocated by the transportation commission. §§43-1-112.5 & 43-1-113(1), C.R.S. CDOT is incorporated into the state's Annual Financial Report as a component of the

---

[5] The commission is designated as a "body corporate," §43-1-106(7), C.R.S., a term which typically "denote[s] entities such as counties and municipalities that are not arms of the state," **Simon**, 946 P.2d at 1308. Nevertheless, the choice of a corporate form for a particular state entity is not dispositive. **See Graham v. State of Colorado**, 956 P.2d 556, 563 (Colo. 1998). Moreover, and contrary to plaintiff's argument, the commission does not have authority to contract or provide financing to CDOT. (**See Def. Reply Br. App.**, Exh. A ¶ 6 at 2.) **Cf. Simon**, 946 P.2d at 1308-09 (CCIA not an arm of the state because, *inter alia*, it had power to enter into contracts). Its responsibility, rather, is to authorize CDOT to enter into any such contracts and to allocate funds appropriated by the General Assembly for CDOT. (**Def. Reply Br. App.**, Exh. A ¶¶ 7-8 at 2.)

Colorado state government. (**Def. Reply Br. App.**, Exh. A ¶ 9 at 2.)

Other factors indicate further that CDOT is part and parcel of the state and not a separate, autonomous entity. CDOT must report its expenditures monthly to the state controller, who has the power to disallow any expenditures not within the budget. §43-1-113(10)-(12). Although CDOT has authority to enter into contracts, it may do so only if the state controller either co-signs the contract or delegates authority to CDOT to sign the contract. (**Def. Reply Br. App.**, Exh. A ¶ 9 at 2.) CDOT employees participate in the state personnel system. COLO. CONST., art. XII, § 13. *Cf. Simon*, 946 P.2d at 1308-09 (noting that Colorado compensation insurance authority's "autonomy from the state is emphasized by the fact this its employees are exempted from the state personnel system"). In addition, the state attorney general provides legal services to both CDOT and the commission. §43-1-112(1), C.R.S.

Thus, although CDOT undoubtedly has autonomy in how it conducts its day-to-day operations, it is subject to significant oversight by the state. It is a creature of the state constitution, accountable to the General Assembly, and many of its most basic functions are intimately intertwined with those of the state executive and legislative branches. In light of these considerations, this factor weighs strongly in favor of a finding that CDOT is an arm of the state. ***See East West Resort Transportation, LLC v. Sopkin***, 371 F.Supp.2d 1253, 1258-59 (D. Colo. 2005) (weighing similar factors in determining that Colorado Public Utilities Commission is an arm of the state).

## B. SOURCES OF FUNDING

The second relevant consideration is the degree to which CDOT receives funding from the state. For the most recent fiscal year (2012-2013), CDOT received the majority of its funding from two sources in almost equal shares: forty-one percent (41%) from the state Highway Users Tax Fund (HUTF), comprised of state motor fuel excise taxes, state registration fees, and other state fees and assessments,[6] and forty percent (40%) from Federal Highway Administration apportionments. The remainder of the budget comes from other miscellaneous sources, most significantly interest income from the State Highway Fund.[7] (**Def. Reply Br. App.**, Exh. A ¶ 19 at 4.)

CDOT therefore relies on state funding for nearly sixty percent (60%) of its budget. None of these funds are available to satisfy judgments against CDOT. (**Def. Reply Br. App.**, Exh. A ¶¶ 15 & 16 at 3.) *See Pierce v. Delta County Department of Social Services*, 119 F.Supp.2d 1139, 1148 (D. Colo. 2000). Although it has the ability to issue bonds for limited purposes, subject to voter approval as contemplated by TABOR, it has no ability to levy taxes to fund its operations. (**Def. Reply Br. App.**, Exh.

---

[6] The rates for these fees and assessments are set by the General Assembly and collected by the state Department of Revenue, then transferred to the state treasurer, who allocates them monthly to CDOT. §43-4-205(1). (*See also* **Def. Reply Br. App**., Exh. A ¶ 13 at 2.) HUTF funds may be used exclusively for the construction, maintenance, and supervision of state highways. **COLO. CONST**. Art. X, § 18.

[7] Another 7.9% of CDOT's 2012-2013 budget is attributable to the High Performance Transportation Enterprise (HPTE), *see* §43-4-806, C.R.S, and the State Bridge Enterprise, *see* §43-4-805, C.R.S.. Plaintiff points out that the Enterprises can issue revenue bonds and seek financing. Although defendant argues that this is not entirely true (*see* **Def. Reply Br. App.**, Exh. A ¶ 18 at 4), I find the issue not relevant because the Enterprises "operate as a government-owned business[es] within the department [of transportation]." §§43-4-805(2)(a)(I) & 43-4-806(2)(a)(I). They are governed by separate boards and operate independently of CDOT. (*See* **Def. Reply Br. App.**, Exh. A ¶ 18 at 4.) Their budgets are adopted and approved internally. Although CDOT can lend money to the Enterprises, it does not have access to any funds which they may collect, largely through the imposition of tolls and fares, in the case of the HPTE, or a bridge safety surcharge, in the case of the Bridge Enterprise. (*Id.*, Exh. A ¶ 19 at 4.)

A ¶¶ 16-17 at 3-4.)  *See Steadfast Insurance Co.*, 507 F.3d at 1253; *Sturdevant*, 218 F.3d at 1170.

I thus find and conclude that these factors, taken as a whole, likewise support a conclusion that CDOT is an instrumentality of the state

### C.  STATEWIDE FOCUS

Finally, I conclude that CDOT's mission is clearly a statewide one.  By statute, CDOT is charged to

> (a) Provide strategic planning for statewide transportation systems to meet the transportation challenges to be faced by Colorado in the future;
>
> (b) Promote coordination between different modes of transportation;
>
> (c) Integrate governmental functions in order to reduce the costs incurred by the state in transportation matters;
>
> (d) Obtain the greatest benefit from state expenditures by producing a statewide transportation policy to address the statewide transportation problems faced by Colorado; and
>
> (e) Enhance the state's prospects to obtain federal funds by responding to federal mandates for multi-modal transportation planning.

§43-1-101(1)(a)-(e), C.R.S.  All these aspects of CDOT's mission clearly favor a finding that it is an instrumentality of the state.

### IV.  CONCLUSION

My analysis of the relevant factors leads me to conclude that CDOT is an arm of the state and thus entitled to the benefit of the state's Eleventh Amendment immunity. As I noted in my previous order, CDOT has not waived its right to insist on its rights in

this regard. (*See* **Order** at 12 n.10 [#55], filed November 14, 2012.) Accordingly, plaintiff's remaining claims, for alleged violation of his First Amendment rights and for unlawful discrimination under state law, must be dismissed for lack of subject matter jurisdiction.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Memorandum Brief in Support of Combined Motion To Dismiss and Motion for Summary Judgment** [#19], filed June 29, 2012, is **GRANTED IN PART**;

2. That the motion to dismiss is **GRANTED**;

3. That plaintiff's claims arising under the First Amendment (Third, Fourth, and Fifth Claims for Relief) and under state law (Sixth Claim for Relief) are **DISMISSED WITH PREJUDICE**;

4. That the Trial Preparation Conference scheduled for Friday, April 12, 2013, at 2:30 p.m., and the trial, currently scheduled to commence on Monday, April 29, 2013, are **VACATED**;

5. That judgment **SHALL ENTER** on behalf of defendant, the Colorado Department of Transportation, against plaintiff, David C. Ross, on plaintiff's claims arising under the First Amendment (Third, Fourth, and Fifth Claims for Relief) and under state law (Sixth Claim for Relief);

6. That judgment also **SHALL ENTER** in accordance with my previous order granting the motion for summary judgment (*see* **Order** ¶ 4 at 24 [#55], filed November 14, 2012); and

      7.  That defendant is **AWARDED** its costs to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

      Dated March 14, 2013, at Denver, Colorado.

                                          **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge